IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIRE PROTECTION SERVICE, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-02162 |
| | § | |
| SURVITEC SURVIVAL PRODUCTS, | § | |
| INC. d/b/a SURVITEC GROUP, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant Survitec Survival Products, Inc.'s ("Survitec") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss" or "Motion") [Doc. # 5]. Plaintiff Fire Protection Service, Inc. ("FPS") responded,[1] and Survitec replied.[2] The Motion is ripe for decision. Based on the parties' briefing, pertinent matters of record, and relevant legal authority, the Court **denies** Survitec's Motion to Dismiss.

---

[1] Plaintiff's Response to Defendant Survitec's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Response") [Doc. # 6].

[2] Survitec's Reply to Fire Protection Service Inc.'s Response to the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Reply") [Doc. # 7].

I.  **BACKGROUND**

This factual background is drawn from the allegations in Plaintiff FPS's Complaint.[3] These allegations, for the purposes of the Motion, are taken as true. *See, e.g.*, *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

Survitec, a Delaware corporation headquartered in Jacksonville, Florida, is in the business of manufacturing marine safety and survival equipment, including life rafts.[4] FPS, a Texas corporation headquartered in Houston, was a dealer and servicer of Survitec's life rafts until Survitec terminated their dealer arrangement in December 2017.[5] After FPS's attempts to have Survitec repurchase its life raft inventory failed, FPS initiated this lawsuit in Texas state court on June 14, 2019.[6]

FPS asserts a single cause of action against Survitec for violation of Texas's Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers

---

[3]  Plaintiff's Original Petition and Request for Disclosure ("Complaint") [Doc. # 1-2].

[4]  Defendant Survitec Survival Products, Inc.'s Notice of Removal ("Notice of Removal") [Doc. # 1], ¶ 4; Complaint ¶ 5.1.

[5]  Notice of Removal ¶ 3; Complaint ¶ 5.1.

[6]  Complaint ¶ 5.1.

Act ("Deal Protection Act" or the "Act").[7] *See* TEX. BUS. & COM. CODE § 57.001 *et seq*. FPS alleges Survitec violated its duty under the Act to repurchase, after termination of the parties' dealer agreement, all the life rafts and parts FPS had purchased from Survitec.[8] Survitec timely removed based on diversity jurisdiction.[9]

## II. MOTION TO DISMISS STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington*, 563 F.3d at 147). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012).

Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When there

---

[7] *Id.* ¶ 6.1.

[8] *Id.*

[9] Notice of Removal ¶ 4.

3

are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court "accept[s] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Edionwe*, 860 F.3d at 291 (quoting *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012)).

## III. <u>DISCUSSION</u>

Survitec moves to dismiss FPS's Complaint for failure to state a claim under the Deal Protection Act. The Act governs the relationship of suppliers and dealers with respect to certain "equipment," as defined by the Act. *See* TEX. BUS. & COM. CODE § 57.002(7). Survitec asserts that the parties' dispute regarding the repurchase of life rafts is not governed by the Dealer Protection Act because life rafts do not qualify as "equipment" within the meaning of Act.

### A. The Dealer Protection Act

Recognizing that the sale and rental of "agricultural, construction, industrial, mining, outdoor power, forestry, and lawn and garden equipment through"

4

independent dealers "vitally affect [Texas's economy], the public interest, and the public welfare," the Texas Legislature in 2011 enacted the Dealer Protection Act to regulate "the business relationship between . . . independent dealers and equipment suppliers." Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act, 82nd Leg., R.S., ch. 1039, § 1, 2011 Tex. Sess. Law Serv. (codified at TEX. BUS. & COM. CODE § 57.001 *et seq.*). Under the Act, "[a] supplier who refuses to repurchase any inventory covered [by the Act] after termination or discontinuation of the dealer agreement is liable to the dealer for" 110 percent of the repurchase price, freight charges, accrued interest, and attorney fees and costs. *See* TEX. BUS. & COM. CODE § 57.355(a). A "dealer agreement" is defined as "an oral or written agreement or arrangement, of definite or indefinite duration, between a dealer and a supplier that provides for the rights and obligations of the parties with respect to the purchase or sale of equipment or repair parts." *Id.* § 57.002(4).

> The Act, in turn, defines "equipment" as:
>
> machinery, equipment, or implements or attachments to the machinery, equipment, or implements used for, or in connection with, any of the following purposes:
>
> (i) lawn, garden, golf course, landscaping, or grounds maintenance;
>
> (ii) planting, cultivating, irrigating, harvesting, or producing agricultural or forestry products;

5

(iii) raising, feeding, or tending to livestock or harvesting products from livestock or any other activity in connection with those activities; or

(iv) *industrial, construction, maintenance, mining, or utility activities or applications* . . . .

*Id.* § 57.002(7)(A) (emphasis added). The Act expressly excludes from the definition of "equipment":

(i) trailers or self-propelled vehicles designed primarily for the transportation of persons or property on a street or highway; or

(ii) all-terrain vehicles, utility task vehicles, or recreational off-highway vehicles.

*Id.* § 57.002(7)(B). The Act defines "repair part" as "all parts related to the repair of equipment, including superseded parts." *Id.* § 57.002(14).

### B. The Court Cannot Conclude that FPS Fails to State a Claim Under the Dealer Protection Act

Survitec contends that "life rafts" are not covered by the Dealer Protection Act's definition of "equipment," and therefore FPS's Dealer Protection Act claim fails as a matter of law. Survitec cites no caselaw interpreting the Act, and the Court has not found any authority construing the term. Moreover, Survitec identifies no relevant legislative or drafting history, and the Court's review of the legislative history has not revealed relevant insights regarding the present dispute.

The Court is unpersuaded that, as a matter of law, Survitec's life rafts cannot qualify as "equipment" within the meaning of the Dealer Protection Act. The

Act's definition of "equipment" is expansive. The Act's definition of equipment covers "machinery, equipment, or implements . . . used for, or in connection with . . . industrial . . . activities or applications." *See* TEX. BUS. & COM. CODE § 57.002(7)(A). The Act covers commercial dealership agreements in extremely broad sectors—agriculture, construction, industry, mining, forestry, and landscaping. The Act's general applicability is supported by the existence of very limited and specific carve-outs—trailers, motor vehicles, and ATVs. *Cf. Hillman v. Maretta*, 569 U.S. 483, 496 (2013) ("[W]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)).

Generously construing FPS's Complaint, as the law requires, the Court cannot conclude as a matter of law that Survitec's life rafts do not fall within the Act's coverage of "equipment." FPS represents that Survitec's life rafts "are used in connection with a wide array of industries and activities, including construction, maintenance, and off-shore drilling."[10] Survitec itself represents that its "life rafts are precisely a type of boat used in the maritime industry . . . for transportation of

---

[10] Response at 5.

people during emergency situations."[11] Accordingly, for purposes of Rule 12(b)(6), the Court cannot conclude that FPS has failed to state a claim for relief that is "plausible on its face" that Survitec's life rafts qualify as equipment within the meaning of the Dealer Protection Act.

IV. **CONCLUSION AND ORDER**

Because the Court cannot conclude that FPS fails to state a claim under the Dealer Protection Act, it is hereby

**ORDERED** that Defendant Survitec Survival Products, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss" or "Motion") [Doc. # 5], is **DENIED**.

SIGNED at Houston, Texas, this 9th day of **August, 2019.**

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

---

[11] Motion at 3. While FPS's and Survitec's assertion are not contained in FPS's Complaint, the Court considers them because Survitec failed to object to its consideration. *Cf. San Leandro Emergency Med. Gro. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 809 (2d Cir. 1996) (considering extraneous material when plaintiff did not object to their consideration and urged the Court to consider it); *Geiger v. Solomon-Page Grp., Ltd.*, 933 F. Supp. 1180, 1182 (S.D.N.Y. 1996) (considering extraneous material when plaintiff did not object to tits consideration).