IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

− − −

THE HONORABLE LEE H. ROSENTHAL, JUDGE PRESIDING

| | |
|---|---|
| FIRE PROTECTION SERVICE, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SURVITEC SURVIVAL PRODUCTS, )<br>INC., )<br>)<br>Defendant. ) | NO. 4:19-CV-02162 |

STATUS CONFERENCE HELD REMOTELY
OFFICIAL REPORTER'S TRANSCRIPT OF PROCEEDINGS
Houston, Texas
December 5, 2022

APPEARANCES:

For the Plaintiff:   William Matney, Esq.

For the Defendant:   Peter McLauchlan, Esq.
                     Jeremy Gaston, Esq.
                     David McLauchlan, Esq.


Reported by:   Mary Nancy Capetillo, CSR, RPR, TRR
               Official Court Reporter
               United States District Court
               Southern District of Texas
               mary_capetillo@txs.uscourts.gov

    Proceedings reported by computerized stenotype

machine.

PROCEEDINGS

1

2          THE COURT:  We're just waiting for

3     Mr. Matney?

4          MR. MATNEY:  Good morning, Your Honor.

5     Scott Matney for the Plaintiff, Fire Protection Service.

6          THE COURT:  Good morning.  Is counsel for

7     the defendant on?

8          MR. DAVID McLAUCHLAN:  Yes.  At least one

9     of us here, David McLauchlan for Defendant Survitec

10    Survival Products.  I'm expecting my brother, Peter, to

11    join the call and possibly --

12         THE COURT:  Mr. Gaston?

13         MR. DAVID McLAUCHLAN:  Mr. Gaston, yes.

14         THE COURT:  All right.  I see the other

15    Mr. McLauchlan, and I think we're waiting for Mr. Gaston

16    still.

17         MR. PETER McLAUCHLAN:  Yes.  Two are

18    better than one.

19         MR. GASTON:  Good morning.

20         THE COURT:  All right.  I think we're now

21    all present, correct?

22         MR. GASTON:  Yes, Your Honor.

23         THE COURT:  All right.  So this case is

24    back from a remand from the Fifth Circuit before a

25    different district judge.  So we need a scheduling

order.  This case never really proceeded beyond its
threshold issues.  Is that accurate?

              MR. MATNEY:  Your Honor, actually we were
in the middle of trial; and the defendant filed a motion
for partial summary judgment after the plaintiff rested;
and that's what went up.  So I guess technically here we
are a couple of years and several hundred thousand
dollars later still in the middle of trial.  There is
one issue that Your Honor might not be aware of; and
that is prior to the trial and unbeknownst to us and
Judge Atlas, the defendant had filed a second lawsuit
alleging some of the things that it had asserted as
affirmative defenses in this lawsuit.  We were not aware
of it until after the motion to dismiss in this lawsuit
was granted, and our appellate timetable was about to
expire; and then that was mentioned for the first time
by Survitec to us in the vein of an offer of settlement.
And so what we have now, that case is currently residing
in Judge Bennett's chambers; but it's been --

              THE COURT:  He's got the lower number.

              MR. MATNEY:  Right.  And it's been going
on since January of 2021.  I filed a 12(b) motion early
on, and about a year later that was denied as moot
because one of the many grounds had to do with some of
their pleadings.  They amended their pleadings, but

1   there still remained some substantive issues we had.  So

2   we filed another 12(b) motion.  That has been pending

3   for quite some time now.

4               We haven't filed an answer.  There hasn't

5   been a scheduling issue in that case, but my concern is

6   for the sake of judicial economy and also to not have

7   conflicting results that -- I don't want to fight this

8   battle here against those defenses and then have to turn

9   around and fight the battle again as a defendant when

10  they're referring to the claimed defenses.  So I was

11  thinking maybe some sort of consolidation of those

12  claims into this lawsuit might be appropriate.

13              THE COURT:  Have you raised that before

14  Judge Bennett?

15              MR. MATNEY:  We have not, Your Honor.  I

16  guess my 12(b) motion has been pending, and we have a

17  scheduling order that we submitted and has not been

18  signed.  That's been pending for quite some time.

19              THE COURT:  All right.  So what is the

20  case number in his court?

21              MR. MATNEY:  That would be Cause

22  Number 4:21-CV-00312.

23              THE COURT:  I've got the first filed, the

24  related cases.

25              MR. MATNEY:  Correct.

1          THE COURT:  So under our usual method of

2    proceeding, the case would be transferred from Judge

3    Bennett to me and coordinated with the schedule for this

4    case.

5          MR. MATNEY:  That would be my

6    understanding, Your Honor.  Yes.

7          THE COURT:  All right.  So give me again

8    his case number.

9          MR. MATNEY:  Sure.  It is 4:21-CV-00312.

10         THE COURT:  All right.  So we would

11   transfer it to my court, and let's assume that we're

12   going to enter the same scheduling order in both.  What

13   do you want to do?  You were in trial, but tell me what

14   the record looks like here.

15         MR. MATNEY:  Well, as I said, we, the

16   plaintiff, rested; and then they filed this motion.

17   That's what eventually got granted.  It went up.  So

18   there is a complete record for at least half of the

19   trial.  Since we've had some passage of time, there

20   might be some damages that need to be updated.

21         THE COURT:  Is that all?  Is liability

22   completely laid out in the record?

23         MR. MATNEY:  We believe it is, Your Honor.

24   I don't think there's really been a factual dispute as

25   far as liability.  The main dispute has been a legal

1   argument; and that is Survitec has maintained that the

2   particular statute upon which we sued, it does not apply

3   to them.  They asserted that motion many times during

4   Judge Atlas' trial or proceedings; and she denied it,

5   you know, formally several times.  So we don't really

6   believe that liability is as much an issue; but like I

7   said, there is some projections of economic damages that

8   with the passage of two years might need to be updated

9   for our portion of the case.

10             THE COURT:  So how much does the plaintiff

11  believe the case involves?

12             MR. MATNEY:  Well, at a bare minimum,

13  there is this buyback of equipment under the protection

14  act; and that's probably in the nature of, you know,

15  $500,000 at this point; and then there's economic

16  damages that could go into the millions of dollars, and

17  it's --

18             THE COURT:  You mean lost profits?

19             MR. MATNEY:  Yeah.  There's -- the statute

20  forbids them canceling without cause and provides some

21  sort of -- a certain number of days to cancel, which

22  they did not comply with.  And so we have an economic

23  expert that has analyzed the accountings and projected

24  what our lost revenue would have been as a result of --

25  if we would have been able to continue to do business

```
1    with these guys as the dealer, and so that's a
2    component.  And then another component, strangely, not
3    that the tail's wagging the dog, but they're also
4    responsible for all costs; and in this case since we
5    went up on appeal and everything else, our attorney's
6    fees and our appellate fees are quite substantial at
7    this time.
8              THE COURT:  So total, what are you going
9    to be asking a court or a jury to award?
10             MR. MATNEY:  I would say we're looking at
11   somewhere in the, you know, 5-to-7-million-dollar range.
12             THE COURT:  And how many years of
13   prospective business is that based on?
14             MR. MATNEY:  Well, he does it in tiers; so
15   there's like a couple of year of tiers.  There's the
16   history from when the termination happened to trial, and
17   there's tiers for a couple of years out; and then he
18   projects out to ten years, I think, from the full date
19   of cancellation.  So it's almost like an a-la-carte menu
20   because the statute is not very clear in terms of what
21   those damages would be considered as reasonable.  So he
22   did it in tranches, if you will, or groups.
23             THE COURT:  Have the parties tried to
24   resolve the case --
25             MR. MATNEY:  Yes, Your Honor.
```

1           THE COURT:  -- since it's been -- at this

2      stage?

3                MR. MATNEY:  Not since the appeal, no.  We

4      did order -- we were ordered by Judge Atlas to be in

5      front of Judge Caroline Baker; and we did so twice, I

6      believe, and were -- excuse me -- not successful in

7      reaching a settlement at that time.  But since the

8      granting of their motion to dismiss and the appeal,

9      there has not been any subsequent mediations.

10               THE COURT:  Does it make sense to have one

11     before we figure out how we're going to try the rest of

12     the case and deal with what's already been tried?

13               MR. MATNEY:  Certainly, Your Honor.  We're

14     always willing to talk either in a formal or informal

15     setting, for sure.

16               THE COURT:  Is it likely -- is there

17     sufficient likelihood that it would succeed to make it

18     worth your time and money?

19               MR. MATNEY:  I would hope so, but I guess

20     we've never had a figure that we were -- thought would

21     cover even our basis of the equipment that they're

22     supposed to repurchase as well as our costs and fees;

23     and those have only gone up.  So to me that's a question

24     that's better posed to opposing counsel, because I don't

25     feel like my clients are being unreasonable here; but we

 1    just haven't gotten into a range that would even make

 2    financial sense for us to consider.

 3                    THE COURT:  Let me hear from the other

 4    side.

 5                    MR. PETER McLAUCHLAN:  Yes.  Hi, Your

 6    Honor.  Peter McLauchlan, lead counsel, along with David

 7    McLauchlan and Jeremy Gaston.  Yes, Survitec would

 8    always be open to settlement discussions and mediations;

 9    and perhaps mediation could be accomplished sometime in

10    the next two months; and if -- and we'd go back to Judge

11    Baker, I think.  She's very familiar with the case.

12                    THE COURT:  Or you could go to Judge

13    Atlas.

14                    MR. PETER McLAUCHLAN:  Yes, I guess so.

15    I'm not sure opposing counsel would like that.  She

16    ruled against them, but anyway we're open -- we're open

17    to anyone.

18                    THE COURT:  Does it make sense to go back

19    to Judge Baker?  Have you talked about that with each

20    other, schedules, anything of that nature?

21                    MR. MATNEY:  Your Honor, Scott Matney

22    here.  I  don't have a problem with meeting in front of

23    Judge Baker again.  I thought she did as good a job as

24    could be expected the last couple of times; and as

25    Mr. McLauchlan pointed out, she's certainly familiar

1    with the case.  To answer your second part of your

2    question, no, we have not consulted her schedule or made

3    attempts to schedule any mediation in front of her or

4    anyone else.

5                THE COURT:  All right.  So in terms of

6    discovery, is there more to be done, just to update

7    damages?  Is there an expert for that, or what are we

8    looking at here?

9                MR. MATNEY:  As far as our case-in-chief,

10   I think that the discovery would really be focusing just

11   on updating the damages for the -- per our expert

12   report; but if we're taking over the other case, there

13   are claims -- this is a trademark infringement claim --

14   that they're asserting; and we do believe that our

15   motion to dismiss is valid based on res judicata and

16   collateral estoppel as well per single doctrine.  So we

17   think that that part of the case should be disposed of

18   on legal grounds; but if that motion is denied or some

19   subsequent summary judgment motion is denied, then, of

20   course, we would probably need to do some discovery as

21   it relates to their trademark claims; and that would

22   focus -- as well as the likelihood of confusion on not

23   only trademark elements but also would focus on --

24   certainly on their damages model.

25                THE COURT:  Response?

1            MR. PETER McLAUCHLAN:  Yes, Your Honor.

2    First off, Survitec does not agree that liability is

3    uncontested.  It is disputed, and there was no final

4    ruling on at least one and perhaps two matter of law

5    issues.  For purposes of judicial economy, Survitec

6    would not be opposed to consolidating the cases.

7            So that the Court understands, the other

8    case is a trademark infringement claim, because part of

9    the termination notice included instructions to FPS to

10   not use Survitec's -- excuse me one second, Your Honor.

11            Sorry about that.

12            One of the main issues was to not use the

13   logos and trademarks, and they have been used since

14   termination.  In fact, in some instances they're still

15   being used.  So that's kind of a very separate part of

16   the case no matter what happens on the dealer

17   termination aspect of it.  So I just wanted the Court to

18   be aware that it is -- they're connected but quite

19   separate.

20            THE COURT:  So are they -- are you in need

21   of discovery on one case but not the other --

22            MR. PETER McLAUCHLAN:  Yes.

23            THE COURT:  -- the trademark case but not

24   other parts?

25            MR. PETER McLAUCHLAN:  Yes, exactly.

1    We're in the early stages of discovery in the trademark

2    case; whereas in the dealer termination case, as

3    Mr. Matney pointed out, there might need to be a slight

4    update since time has passed; and instead of relying on

5    projections from the plaintiff's expert we can look at

6    real data, but then the defense portion of the case

7    could commence.  And the trademark portion of the case

8    is really a separate animal because either way with

9    respect to the dealer termination case, Survitec

10   contends that there has been a trademark violation; and

11   that needs to be addressed in this court or in Judge

12   Bennett's court.

13            THE COURT:  All right.  You want to

14   respond?

15            MR. MATNEY:  Sure, Your Honor.  And this

16   kind of goes to the heart of our 12(b) motion, and that

17   is right before the initial trial setting Defendant

18   Survitec asserted -- tried to assert moot relief to

19   assert these same claims as affirmative claims.  It was

20   right on the eve of trial; and so Judge Atlas denied

21   that request but allowed them to assert similar type

22   claims in the guise of affirmative defenses.  So we did

23   about three weeks of expedited discovery and then had

24   the trial reset for a three- or four-week time period

25   and then tried it in early February of 2021.

1          So, you know, as I said, our 12(b) motion
2    hits on the fact that we bought items from them that
3    they -- in trying to argue that they should not have to
4    buy them back from us, as the statute we sued under
5    requires, they said, "Well, you can still sell them."
6    And so we have kind of smoking-gun documents that would
7    take out any claim of trademark infringement under the
8    first sale doctrine because we were -- we bought them as
9    an authorized dealer.  We still have them in stock.  We
10   can sell them, that sort of thing.  But the parties
11   despite the litigation were continuing to do business
12   for years while the litigation was pending and still to
13   this day, to some degree, do business; and it wasn't
14   until they raised this issue on the eve of trial
15   about -- complaining about our website that we noticed
16   that they were still up there and pulled them off, and
17   they haven't been up there since.
18          So, you know, yes, I understand that if a
19   dispositive motion isn't granted, then there will be the
20   need for some discovery on their trademark claims; but
21   our position is that those are kind of a
22   dead-on-arrival-type situation.
23          THE COURT:  So it sounds like the best
24   thing to do would be for you guys to, as efficiently and
25   cheaply as possible, update damages and any different

1  legal issues based on the trademark claims that

2  apparently have not been discovered but may not be

3  materially different in the elements to either liability

4  or damages than the claims that have been the subject of

5  some ongoing exchange of information.

6            And then it makes sense -- so if the cases

7  both come before me, it makes sense for you guys to go

8  mediate as quickly as possible once you exchange updated

9  damages information and the defenses or limitations to

10  any of the elements of damages.

11            MR. MATNEY:  That makes sense, Your Honor.

12            THE COURT:  And so what I would propose

13  that you do is by -- let's see -- December -- and I

14  don't know how quickly you can update the information

15  that you've already begun to exchange; but if you could

16  do it by -- actually let's say January 13th, go to

17  mediation by February 3rd.  And I would contact Judge

18  Baker's scheduling person promptly to get on her books,

19  and if you -- and I would go to mediation before you get

20  a ruling on the outstanding legal issues.  You've got a

21  very good -- you've got a much better sense than I can

22  reliably deliver you an opinion for what the exposures

23  and benefits, both strengths and weaknesses, of the

24  motion arguments are.  I don't think you need to wait

25  for me.

1          MR. MATNEY:  Understood.

2          THE COURT:  So mediate.  And if you're

3 unable to get the case resolved in mediation, I'm going

4 to set you for a hearing on February 10 by Zoom at

5 10:00 a.m.; and we'll see what we need to do.

6          MR. MATNEY:  Sounds like a good plan, Your

7 Honor.

8          THE COURT:  All right.  I think we have

9 a -- the schedule is fixed then.

10          MR. PETER McLAUCHLAN:  Thank you, Your

11 Honor.

12          MR. MATNEY:  Thank you, Judge.

13          MR. GASTON:  Thank you.

14          THE COURT:  You're welcome.  Thank you.

15          (Proceedings concluded.)

16              *  *  *  *  *

17     I, Mary Nancy Capetillo, certify that the foregoing

18 is a correct transcript from the record of proceedings

19 in the above matter.

20

January 30, 2023

21                    /s/MaryNancyCapetillo_____
                    Signature of Court Reporter

22

23

24

25