United States District Court
Southern District of Texas
**ENTERED**
June 11, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIRE PROTECTION SERVICE, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. H-19-2162 |
| | § § | |
| SURVITEC SURVIVAL PRODUCTS, INC., | § § § | |
| | § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This case is old. Old enough to have been before several judges. Old enough to have been tried to a partial verdict that left uncertainty about its preclusive effects. Old enough to have started in state court, been removed to federal court in 2019, and had a related federal proceeding filed in 2021. The state court lawsuit challenged the refusal of Survitec Survival Products ("Survitec Survival") to repurchase life rafts that it had sold to Fire Protection Service, Inc. ("Fire Protection"), but which Fire Protection could not sell. In this federal court lawsuit, Survitec Survival alleges that Fire Protection has infringed, counterfeited, and diluted various trademarks; Fire Protection contends that Survitec Survival does not own those trademarks.

The state court lawsuit was removed to federal court, where Fire Protection's claims against Survitec were tried and then appealed, resulting in a judgment that dismissed Fire Protection's claims. (Docket Entry No. 112). While this case was pending, Survitec Survival filed another federal suit against Fire Protection, alleging state and federal trademark infringement, dilution, and unfair competition. *Survitec Survival Products, Inc. v. Fire Protection Service, Inc.*,

No. 21-312 (S.D. Tex.). The court instructed the parties to file all motions in this earlier filed federal case, 19-2162.

Where are we now? The motions the parties ask this court to decide are about Survitec Survival's claims against Fire Protection for infringement and dilution. Fire Protection has moved to dismiss under Rule 12(b)(1) and for summary judgment under Rule 56, alleging that Survitec Survival lacks standing because it is not the true trademark owner. (Docket Entry Nos. 117, 118). Based on the briefs, the supplemental information, the record, and the applicable law, the court grants the motion to dismiss without prejudice and with leave to amend. The motion for summary judgment is denied as moot. The reasons for these rulings are set out below.

**I.      Background**

Fire Protection operates out of Houston, Corpus Christi, and New Orleans as a dealer and product servicer of maritime and fire safety equipment. (Docket Entry No. 16 at ¶ 4). Fire Protection primarily distributes and services equipment sourced from external distributors and manufacturers.

Survitec Survival is a Delaware corporation with principal offices in Florida. (*Id.* at ¶ 1). Survitec Survival is a wholly owned subsidiary of Survitec Group Ltd. ("Survitec Group") which operates out of the United Kingdom. (Docket Entry No. 124 at 13). Other entities in the Survitec Group include Survitec Group USA, Inc. ("Survitec Group"), the direct parent of Survitec Survival and a subsidiary of Survitec Group, and Survitec Survival Solutions US LLC ("Survitec Solutions USA"), a subsidiary of Survitec Group. (*Id.*).

Survitec has two marks, "RFD" and "SURVIVA," registered with the United States Patent and Trademark Office under Reg. Nos. 1860741; 5631105. (Docket Entry No. 118 at 17). Another

2

mark in question, "ELLIOT", is owned by RFD Beaufort, Inc. and registered with the United States Patent and Trademark Office under Reg. No. 3408716. (*Id.*).

Survitec Survival manufactures and sells marine safety and survival equipment. Survitec Survival entered into an oral agreement to sell Survitec life rafts to Fire Protection. (Docket Entry No. 1-2 ¶ 5.1). Survitec Survival terminated the agreement with Fire Protection on December 27, 2017. (*Id.*). Fire Protection then sued Survitec Survival over its failure to repurchase Fire Protection's unsold inventory of Survitec Survival's products. (*Id.*). Fire Protection alleges that Survitec Survival was obligated to repurchase the life rafts under Texas state law. (*Id.*). Survitec Protection did not repurchase the rafts, despite alleged multiple assurances that they would do so. (*Id.*). These claims were decided in a bench trial, appeal, and judgment dismissing the claims.

Survitec Survival counterclaimed, alleging that Fire Protection's unauthorized use of its marks to advertise Fire Protection's servicing of Survitec life rafts is likely to confuse, cause mistake, or deceive customers in the geographical area where Survitec Survival did business. (Docket Entry No. 124 at 38). Fire Protection filed a Rule 12(b)(1) motion to dismiss the claim, arguing that Survitec Survival lacked standing to bring the claim, and a Rule 56 motion for summary judgment. (Docket Entry No. 117, 118). Fire Protection also moved to strike a portion of Survitec Survival's summary judgment evidence for failing to comply with the Federal Rules of Evidence. (Docket Entry No. 128).

**II.     The Legal Standard for Dismissal Under Rule 12(b)(1)**

Rule 12(b)(1) governs challenges to a federal court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation

omitted). Courts may dismiss for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of a plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (citation omitted); *see also Clark v. Tarrant Cnty., Texas*, 798 F.2d 736, 741 (5th Cir. 1986). The court may consider matters outside the pleadings, such as testimony and affidavits, to resolve a factual challenge to subject-matter jurisdiction, without converting the motion to dismiss to one for summary judgment. *Garcia*, 104 F.3d at 1261.

**III.    Analysis**

A plaintiff must have standing under Article III of the United States Constitution to bring a claim under a federal court's subject matter jurisdiction. *See Abraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2022). To establish standing under Article III, a plaintiff must allege and prove (1) an injury in fact, (2) that is traceable to the defendants' conduct, and (3) that can be redressed by the court. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."

4

*Daves v. Dallas County, Tex.*, 22 F.4th 522, 542 (5th Cir. 2022) (en banc) (quoting *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008)).

Fire Protection alleges that Survitec Survival "lacks Article III standing[] because [it] has no rights to enforce any of the Subject Marks" and is therefore unable to demonstrate an injury in fact. (Docket Entry No. 127). A proprietary interest in, or legal title to, a claim is a requirement for demonstrating an injury in fact. *See Sprint Communications Co. v. APCC Services,* 554 U.S. 269 (2008). The proprietary interest here is created by the Lanham Act. Although Article III standing and statutory standing are separate inquiries, here they implicate the same question: does Survitec Survival have a right to enforce the trademarks under the Lanham Act? Statutory standing requirements determine the answer.

"Whether a plaintiff has a sufficient interest in a mark to sue under the Lanham Act is a question of statutory standing." *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 616 (5th Cir. 2023). "Unlike Article III standing, statutory standing is not jurisdictional. Instead, it asks the merits question of whether or not a particular cause of action authorizes an injured plaintiff to sue." *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 666 (5th Cir. 2020) (citation and internal quotation marks omitted).

A claimant has statutory standing if its claim "fall[s] within the zone of interests protected by" the statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (internal quotations omitted). Section 32(1) protects registered trademarks and provides a cause of action against any person who "use[s] in commerce any . . . imitation of a registered mark . . . likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). This cause of action is available only to the "registrant" of the trademark at issue. "Registrant" is defined to include the original registrant's "legal representatives, predecessors, successors and assigns." *Id.*

5

§ 1127. Under the Lanham Act, the owner is the only proper party to apply for registration of a mark. *Id.* § 1051(a)(1) ("The owner of a trademark used in commerce may request registration of its trademark."). "Therefore, only an owner or a true assignee has statutory standing to bring a claim under section 32(1)." *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 616 (5th Cir. 2023) (citing *Neutron Depot, L.L.C. v. Bankrate, Inc.*, 798 F. App'x 803, 806 (5th Cir. 2020)[1]; *accord Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013)).

Under the Lanham Act, a "registrant" is not only the registrant itself but also its "legal representatives, predecessors, successors and assigns." 15 U.S.C. § 1127. Survitec Survival alleges that although it is not the mark's registrant, it has been assigned the mark and is the legal representative designated by the mark's owner, Survitec Group.

Because "Congress could easily have included 'licensee' or 'exclusive licensee' among the terms in 15 U.S.C. § 1127 that define a 'registrant'" but "chose instead to limit standing to parties having a more specific set of interests in the registered mark," a plaintiff bringing a claim under Section 32 or Section 43(c) must show that "its 'license' amounts, in fact, to an assignment." *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 78 (2d Cir. 2013); *accord Neutron Depot, L.L.C. v. Bankrate, Inc.*, 798 F. App'x 803 (5th Cir. 2020). Survitec Survival's counsel submitted a declaration admitting that Survitec Survival is a "non-exclusive licensee" of the Survitec Group's brand marks. (Docket Entry No. 124-7 at ¶ 32). Survitec Survival states "that no assignments had been made, . . . and that Survitec Survival was . . . treating itself, rightly or wrongly, as a proxy for Survitec[.]" (Docket Entry No. 124 at 56).

The Second Circuit, although not the Fifth Circuit, has analyzed who can be a "legal representative" under the Lanham Act.  That Second Circuit determined that in order to have

standing as a legal representative, the represented party must be "somehow disabled from asserting the rights at issue." *Sojuzplodoimport*, 726 F.3d at 81. The Second Circuit explained:

> The text and structure of the Lanham Act support [this] interpretation. Section 32(1) expressly restricts standing to the "registrant" (which the Act expressly defines as the owner or, as we have said, his "legal representatives, predecessors, successors and assigns"). 15 U.S.C. § 1127. By contrast, Section 43 of the Act allows suits "by *any person* who believes that he or she is or is likely to be damaged" by the defendant's actions. 15 U.S.C. § 1125(a)(1) (emphasis added). To interpret the phrase "legal representative" broadly would permit both the registrant of the trademark and his putative "legal representative" to file separate suits against the same defendant for the same infringing act—a result that seems inconsistent with Congress's stated intention to limit standing to the single "registrant" of the trademark under Section 32(1) as opposed to the broad standing afforded plaintiffs suing under Section 43. *See Nat'l Licensing Ass'n v. Inland Joseph Fruit Co.,* 361 F.Supp.2d 1244, 1255 (E.D. Wash. 2004) ("Although the term 'legal representative' is not defined by the Act, [a broad construction] would be inconsistent with the obvious intention to limit trademark infringement suits to those [who] have or had ownership interests in the trademark and the historically restrictive interpretation given to 'registrant.'").

*Id.* at 80. The Second Circuit's narrow interpretation has been cited favorably by the Federal Circuit. *Laturner v. United States*, 933 F.3d 1354, 1366 (Fed. Cir. 2019).

Survitec Survival has submitted the declaration of Julian Henley-Price, General Counsel of Survitec Group, the parent company of Survitec Survival. Mr. Henley-Price states that "[a]round approximately December 2020, as general counsel for Survitec [Group] and [its] subsidiaries, I authorized [Survitec Survival] to enforce against [Fire Protection] the intellectual property rights associated with the Survitec brand marks and gave [Survitec Survival] the exclusive right to do so with respect to proceedings in the United States." (Docket Entry No. 124-7 at ¶ 23). He further states that "[t]he purpose of this was to make [Survitec Survival] the attorney in fact and legal representative for these purposes for Survitec and Survitec's subsidiaries. . . . I confirm their current authorization for the continuation of the above referenced action in [Survitec Survival]'s name on their behalf as well as their agreement to be bound by its result." (*Id.* at ¶ 24). Survitec Survival cites to *Idaho Potato Comm'n v. Washington Potato Comm'n*, 410 F. Supp. 171, 173- 74

(D. Idaho 1975), for the proposition that a legal representative under the Lanham Act is "one who stands in the place of and represents the interests of another[.]"

In the absence of guidance from the Fifth Circuit or from district courts in this circuit, the court agrees with the Second Circuit's construction of the phrase "legal representative." To give "legal representative" a broader reading would be contrary to the narrow limitations under Section 32(1). The phrase "legal representatives, predecessors, successors and assigns," appears intended to cover circumstances in which the registrant no longer has legal title to the marks or is unable to defend its right to the marks. The declaration submitted by Mr. Henley-Price says only that Survitec Survival was "authorized" to enforce the trademarks. The ratification of the suit by Survitec Group may cure deficiencies under Rule 17, but the ratification is not sufficient to confer standing on Survitec Survival to support standing under the Lanham Act. *See Sojuzplodoimport*, 726 F.3d at 81.

"The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017). Because of this, SSP has no more standing under Texas state law than under federal law. SSP also makes claims under Louisiana law for unregistered trademarks. "Federal district courts have held that the requirements for dilution under [Louisiana] state law are the same as the requirements for dilution under the Lanham Act." *Survitec Survival Prods., Inc. v. Fire Protection Servs., Inc.*, No. H-21-312, 2023 WL 2634044, at *2 (S.D. Tex. Mar. 24, 2023). Although there are separate claims for registered and unregistered trademarks, "[t]he same tests apply to . . . trademarks . . . to determine whether they are protectible and whether they have been infringed, regardless of whether they are registered or unregistered." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.8 (5th Cir. 2010). The first requirement of this test is to

"establish ownership in a legally protectible mark." *Id*. at 235. SSP has not done so. As a result, Survitec Survival lacks standing to assert its state law claims as well.

Survitec Survival explains that "although the trademark-infringement/unfair-competition claims at issue could have been asserted in the names of the mark holders . . . Survitec did not take that path because the parties had been treating [Survitec Survival] as a proxy for Survitec for years, starting with [Fire Protection]'s own decision to sue [Survitec Survival] rather than Survitec in 2019 on a claim involving [Fire Protection]'s dealer/servicer relationship with Survitec." (Docket Entry No. 124 at 10). "Survitec not only believed this was the most logistically efficient approach but also one that [Fire Protection] was fine with." (*Id.*). The court credits Survitec Survival's statement that it believed FPS had no issues with Survitec Survival bringing suit instead of Survitec. Unfortunately, although Survitec Survival may have been a proper party in the original suit, it is not the proper party here. The court acknowledges that Fire Protection's timing in raising the issue of standing, three years after the suit was filed, is belated, to say the least. Nevertheless, the court must review subject matter jurisdiction at any time, belatedly raised or not.

Finally, Survitec Survival argues that it "has independent standing with respect to both common law (trademark / unfair competition) and the Lanham Act (15 U.S.C. § 1125(a))" on the basis that it "was a trademark owner" of an unregistered trademark in the past, and that § 1125 allows suit for infringement and false advertisement by "any person who believes that he or she is or is likely to be damaged by such act." (Docket Entry No. 124 at 38). Under the Supreme Court's zone-of-interests test in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), a plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

This zone-of-interests test is appropriately evaluated under the summary judgment standard. Although Survitec Survival is the nonmovant, it bears the burden of showing it has standing. "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

Survitec Survival offers no evidence beyond declarations offered for the first time in its response to show any such injury. It argues that "[t]he false perception created by [Fire Protection] in turn dilutes the Survitec raft brands and associated marks by suggesting they require more expensive maintenance than they do . . . That directly threatens harm to authorized dealers for Survitec brand rafts, such as [Survitec Survival], who sold rafts in a geographic market (the United States Gulf Coast) where [Fire Protection] also sold them." (Docket Entry No. 124 at 39). But "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead and ultimately prove an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l*, 572 U.S. at 140. The sole evidence provided by Survitec Survival in support of its claims are declarations by Survitec Group's own employees. The declarations offer only conclusory statement on the question of injury, positing that Survitec Survival "likely [has] been damaged by [Fire Protection]'s outsourcing." (Docket Entry No. 124-8 at ¶ 29). But, as Fire Protection points out, Survitec Survival does not manufacture or directly

10

sell the products at issue and cannot provide evidence of any injury. (Docket Entry No. 127 at 16). This is not enough to support prudential standing at the summary judgment stage.

Fire Protection argues that the court should dismiss Survitec Survival's claims with prejudice because it cannot cure the standing deficiencies. (Docket Entry No. 117 at 24). Survitec Survival responds that "a dismissal with prejudice would . . . give to [Fire Protection] an opening to argue that the dismissal was *res judicata* in some later suit by a different party who sued [Fire Protection] because that party allegedly was in privity with [Survitec Survival] here." (Docket Entry No. 124 at 56). But Fire Protection should not be able to assert this argument against another Survitec brand mark holder in a separate case. A dismissal with prejudice based on lack of standing "would mean that the mark holder never had a chance to get their claims resolved on the merits[.]" (*Id.*). The court agrees. The dismissal is without prejudice. This should mitigate the potential effect of *res judicata* should Survitec Group choose to enforce its trademark rights against Fire Protection, because there has been no final judgment against a Survitec Group subsidiary as to the trademarks owned by Survitec Group.

Although Fire Protection has raised other bases for summary judgment, the court does not reach them because Survitec Survival's lack of standing deprives the court of jurisdiction. Fire Protection's motion for dismissal, (Docket Entry No. 117), is granted without prejudice. Fire Protection's motion for summary judgment, (Docket Entry No. 118), is granted as to prudential standing and is otherwise denied as moot.

SIGNED on June 11, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge